**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **Antonio Cruz-Arboleda,**<br><br>        Petitioner<br><br>                v.<br><br>**United States of America,**<br><br>        Respondent. | CIVIL NO. 16-2216 (PG)<br>Related Crim. No. 96-22 (PG) |

## OPINION AND ORDER

Before the court is petitioner Antonio Cruz-Arboleda ("petitioner" or "Cruz-Arboleda") motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 (Docket Nos. 1, 11), and the United States' (or the "government") opposition thereto (Docket No. 15). For the reasons explained below, the court **DENIES** petitioner's motion to vacate.

## I. Background

On October 31, 1995, Carlos Ruben Rivera-Aponte, Osvaldo Diaz-Pabon, and Antonio Cruz-Arboleda met at Rivera-Aponte's apartment, where they planned to intercept and carjack a delivery truck owned by the J.M. Blanco Company. Upon seeing a J.M. Blanco delivery truck stopped at a red light, Cruz-Arboleda exited Diaz-Pabon's car and entered the passenger side of the delivery truck with a firearm. As Rivera-Aponte and Diaz-Pabon followed in the car, Cruz-Arboleda and the J.M. Blanco driver continued traveling in the truck. Diaz-Pabon later joined Cruz-Arboleda in the truck. They both exited the truck with the driver's personal belongings, joined Rivera-Aponte in the car and returned to the apartment.

On November 28, 1995, Rivera-Aponte, Diaz-Pabon, and Cruz-Arboleda carjacked another J.M. Blanco Company delivery truck. According to Rivera-Aponte's testimony at trial, they met at his apartment again and agreed to go target-shooting together. As they proceeded to the target-shooting location in a station wagon that had been rented by Diaz-Pabon, they saw a J.M. Blanco Company delivery truck stopped at a red light. After the men followed the delivery truck in the station wagon for some distance, Cruz-Arboleda exited the rented vehicle and entered the delivery truck with a firearm.

As Rivera-Aponte and Diaz-Pabon followed in the station wagon, Cruz-Arboleda and the J.M. Blanco driver continued traveling in the delivery truck.

Rivera-Aponte later joined Cruz-Arboleda in the delivery truck. Once the truck stopped, Diaz-Pabon, who was still driving the station wagon, informed Rivera-Aponte that a third vehicle was approaching, and that he would continue driving the station wagon and turn around to pick up Rivera-Aponte and Cruz-Arboleda shortly.

As Rivera-Aponte left the delivery truck to meet Diaz-Pabon, he heard several gunshots. Upon returning to the delivery truck, Rivera-Aponte saw the fatally wounded driver lying on the floor of the truck and Cruz-Arboleda gathering money and the driver's personal belongings. Diaz-Pabon arrived shortly in the station wagon to retrieve Rivera-Aponte and Cruz-Arboleda as agreed. Following an argument between Rivera-Aponte and Cruz-Arboleda about why Cruz-Arboleda had shot the driver, the three men left the scene and returned to Rivera-Aponte's apartment.[1]

On October 15, 1996, Cruz-Arboleda was convicted following a jury trial of two counts of aiding and abetting carjacking, in violation of 18 U.S.C. § 2119 (Counts One and Three) and two counts of aiding and abetting in the use of a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c) (Counts Two and Four). Crim. No. 96-22 (PG) (hereinafter "Crim."), Crim. Docket No. 90. On March 7, 1997, the court sentenced Cruz-Arboleda to life imprisonment as to Count Three, fifteen years as to Count One to be served concurrently with Count Three, five years as to Count Two, and twenty years as to Count Four. See Crim Docket No. 99. The terms as to Counts Two and Four were imposed concurrent to each other, but consecutive to Counts One and Three. Id. On August 20, 1998, the First Circuit Court of Appeals affirmed this court's ruling. See United States v. Diaz-Pabon, 187 F.3d 623 (1st Cir. 1998).

## II.  Legal Standard

Pursuant to 28 U.S.C. § 2255, a federal prisoner may move to vacate, set aside, or correct his sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C § 2255(a); Hill v. United States, 368 U.S. 424, 426-427 (1962); Ellis v. United States, 313 F.3d 636, 641 (1st Cir. 2002).

---

[1] These facts were taken from United States v. Diaz-Pabon, 187 F.3d 623, 1-2 (1st Cir. 1998).

### III. Discussion

On June 24, 2016, Cruz-Arboleda filed a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255. See Docket No. 1. On January 2, 2017, petitioner's Federal Public Defender filed a brief in support of his *pro se* motion. See Docket No. 11. In his petitions, Cruz-Arboleda claims that the court must vacate his Section 924(c) convictions because: (1) §924(c)'s residual clause is unconstitutionally vague after Johnson v. United States, 135 S.Ct. 2551 (2015); and (2) his carjacking convictions fail to categorically qualify as crimes of violence under the statute's "force clause." See Docket No. 1 at p. 4; Docket No. 11 at p. 2. The government submits these claims fail because (1) Johnson's ruling was limited to ACCA and (2) even if § 924(c)'s residual clause were unconstitutionally vague, carjacking is a crime of violence under § 924(c)'s force clause. See Docket No. 15 at p. 2.

The court finds that it does not need to address petitioner's constitutional void-for-vagueness challenge to § 924(c)'s residual clause because carjacking under § 2119 qualifies as a "crime of violence" under § 924(c)'s "force clause." Statute 18 U.S.C. § 924(c)(3)(A), referenced here as the "force clause," provides that a crime of violence is a felony that "(A) has as an element the use, attempted use or **threatened use** of physical force against the person or property of another." And anyone who "with the **intent to cause death or serious bodily harm**, takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another **by force and violence or by intimidation**" will be convicted of carjacking. See 18 U.S.C. 2119(1) (emphasis added).

Cruz-Arboleda maintains that carjacking does not fall under § 924(c)'s "force clause" because (1) the offense can be committed by intimidation, which does not require violent force; (2) death resulting does not require violent force; and (3) aiding and abetting does not require the use of violent force. See Docket No. 11 at p. 10).

Even if carjacking were a divisible offense as petitioner claims and could be perfected through **intimidation** alone, carjacking would still be a "crime of violence" under § 924(c)'s "force clause." The elements of the offense of carjacking under § 2119 make it squarely fit the definition of a "crime of violence" under § 924(c)(3)(A) insofar as carjacking by intimidation necessarily involves the threat of physical force against the victim.

Moreover, the court finds meritless petitioner's contention that the use of physical force is not necessary for death to occur as a result of a carjacking offense. The Supreme Court has established that intentionally causing physical injury - or death in this case – necessarily involves the use of physical force. See United States v. Castleman, 134 S. Ct. 1405, 1414 (2014) (holding that the knowing or intentional causation of bodily injury necessarily involves the use of physical force). As such, death as a result of a carjacking under § 2119 qualifies under the "force clause."

Lastly, petitioner maintains that because he was charged with aiding and abetting a carjacking under § 2119, the elements of aiding-and-abetting liability must be brought under the same analysis to determine whether it constitutes a "crime of violence." Petitioner maintains that a jury need not find that a defendant himself used or threatened force in order to effect a carjacking under § 2119 and therefore aiding and abetting a federal carjacking does not require the use, attempted use, or threatened use of violent physical force. See Docket No. 1 at p. 13. The court rejects this claim. Even if petitioner had been charged *only* as an aider and abettor, "aiding and abetting 'is not a separate offense' from the underlying substantive crime." United States v. Mitchell, 23 F.3d 1, 2 (1st Cir. 1994) (per curiam) (quoting United States v. Sánchez, 917 F.2d 607, 611 (1st Cir. 1990)). Hence, "[o]ne who aids and abets an offense 'is punishable as a principal,' and 'the acts of the principal become those of the aider and abettor as a matter of law.'" Id. at 3 (emphasis in original) (quoting 18 U.S.C. § 2; United States v. Simpson, 979 F.2d 1282, 1285 (8th Cir. 1992)). Thus, "aiding and abetting the commission of a crime of violence is a crime of violence itself." Id.

## IV.  Conclusion

Based on the above, the court finds that petitioner's request for habeas relief under 28 U.S.C. § 2255 (Docket No. 1) is **DENIED AND DISMISSED WITH PREJUDICE.**

## V.    Certificate of Appealability

It is further ordered that no certificate of appealability should be issued in the event that the petitioner files a notice of appeal because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

**IT IS SO ORDERED**.

In San Juan, Puerto Rico, June 14, 2018.

S/ JUAN M. PÉREZ-GIMÉNEZ
**JUAN M. PEREZ-GIMENEZ**
**SENIOR U.S. DISTRICT JUDGE**
